**O'CONNOR BERMAN DOTTS & BANES**
**Second Floor, Nauru Building**
**1 Nauru Loop**
**Susupe, Saipan, CNMI**
**Mail: PO Box 50-1969 Saipan MP 96950**
**Phone: 234-5684**
**Fax: 234-5683**

**Attorneys for Plaintiffs**

**IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| MOHAMMED SHAJAHAN ALI, ) | Civ. No. 07-0018 |
| ) | |
| Plaintiff, ) | |
| ) | MOTION FOR |
| vs. ) | SUMMARY JUDGMENT, |
| ) | OR IN THE ALTERNATIVE |
| MATTHEW T. GREGORY, individually and ) | FOR A PRELIMINARY |
| in his capacity as Attorney General of the ) | INJUNCTION |
| Commonwealth of the Northern Mariana ) | |
| Islands, and MELVIN GREY, individually ) | |
| and in his capacity as Director of Immigration ) | |
| for the Commonwealth of the Northern ) | |
| Mariana Islands, ) | |
| ) | |
| Defendant, ) | |
| _____) | |

Plaintiff Mohammed Shajahan Ali hereby moves the Court for its order granting summary judgment in his favor in this matter. In the alternative, he moves the Court for a preliminary injunction, maintaining his status quo as a lawful immediate relative, and enjoining Defendants from denying or evaluating his renewal application pursuant to the challenged laws and regulations until such time as their constitutionality can be finally determined by this Court. In support of this motion, Plaintiff shows the Court the following:

**Introduction**

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment in his favor as a matter of law. Fed.R.Civ.P. 56. Insofar as this action is a facial challenge to the laws and regulations at issue, there is and can be no genuine issue of material fact, since the only material fact is the text of the laws and regulations themselves.

Plaintiff is entitled to judgment in his favor as a matter of law, since the challenged law and regulations facially infringe his constitutional rights to equal protection and due process, and their application to him by Defendants therefore necessarily deprives him of his civil rights, for the following reasons:

**The Challenged Law and Regulations Violate Equal Protection.**

The constitutionality of immigration legislation in the CNMI, for equal protection purposes, is evaluated under, at a minimum, an immediate scrutiny standard, whereby the legislation, "[t]o pass Constitutional muster . . . must have been enacted to achieve an important governmental interest and the means employed must have a substantial relation to the stated purpose of the law." Chun Nam Kim v. Commonwealth of the Northern Mariana Islands, 3 C.R. 608, 612-13 (D.N.M.I. 1989); Sirilan v. Castro, 1 C.R. 1082, 1125-26 (D.N.M.I. App. Div. 1984).[1]

Neither the law nor the regulations state any specific purpose, which is one strike against them right at the outset of the analysis. To the extent that an implicit purpose can be discerned, however, it is apparently simply that of not granting immigration status based upon a marriage which exists solely for the purpose of conferring that status – i.e., what is often, but inaccurately, called a "fraudulent" or "sham" marriage.[2] That, in and of itself, is not self-evidently an "important

---

[1] The immediate scrutiny standard applies to laws discriminating between classes of aliens, as the law and regulations at issue in this case surely do (i.e., aliens whose marriages meet certain criteria, and those whose do not). They are also, however, aimed at alienage *per se*, in that they apply only to citizen-alien marriages, meaning that strict scrutiny could also be applied. Sirilan, supra, 1 C.R. at 1121. Since they do not meet even intermediate scrutiny, however, they are discussed in those terms herein.

[2] The marriages at issue are duly solemnized in accordance with law, and would not be considered "fraudulent" for any purpose other than their relevance to immigration status. For example, it one spouse died intestate, the other would stand to inherit his or her statutory share of the estate. Nor can either spouse marry anyone else so long as the marriage subsists.

purpose," as it must itself be justified by the ultimate policy ends sought to be achieved. In other words, we cannot simply say that the suppression or discouragement of immigration-motivated marriage is "important" for its own sake. The question of "*why* is it important" must still be answered. It may, of course, be an important purpose to regulate the overall number of aliens living in the CNMI, or to prevent criminal or otherwise undesirable aliens from taking up residence here, but a restriction on immigration-motivated marriages does not accomplish either of these salutary ends. On the contrary, an immigration status based on marriage is inherently self-limiting, since there is only a limited pool of single adults in the CNMI in the first place, and, unlike a federal green card, the CNMI IR status does not continue in effect even after a divorce.[3] Nor is there any reason to believe that there are more criminal elements among the IR population than there are among, for example, nonresident workers. The objection to immigration-motivated marriage is, instead, basically a subjective value judgment regarding the purposes for which a marriage should or should not be entered into.

In any event, even if we regard the purpose as sufficiently important, the "close fit" required by Sirilan is not present. A requirement that the sponsoring spouse reside in the CNMI, or reside with the alien spouse, or both, is not substantially related to its own apparent purpose of suppressing the types of marriage at issue. On the contrary, it sweeps within its ambit at least two extremely common types of marriage which are not "fraudulent" in any reasonable sense of the term: 1) marriages entered into in good faith, which later degenerate, with the couple becoming estranged from one another, including situations of desertion or abandonment, as well as situations of escape from spousal abuse; and 2) marriages in which the couple remains on good terms with one another, but choose to, or are forced by economic circumstances to, live apart, for such purposes as

---

[3] Indeed, under the CNMI system, a federal-type "sham marriage," the essence of which is to marry for the purpose of obtaining a green card, and then, by pre-arrangement, divorce once it is obtained, is *per se* impossible. In the CNMI, one cannot shed the marriage but keep the immigration benefit.

3

employment or educational opportunities. The challenged law and regulations therefore fail the test of equal protection.

**The Challenged Law and Regulations Violate Substantive Due Process Due To Their Arbitrary Character.**

For substantive due process purposes, Commonwealth legislation regarding immigration matters "will be scrutinized to ensure that it is not unreasonable, arbitrary or capricious, and that it is that the means selected have a real and substantial relation to the object sought to be attained." Sirilan, supra, 1 C.R. at 1097. The subject laws and regulations cannot meet even this comparatively deferential standard, since:

> The inference that the parties never intended a bona fide marriage from proof of separation is *arbitrary* unless we are reasonably assured that it is more probable than not that couples who separate after marriage never intended to live together. Common experience is directly to the contrary. Couples separate, temporarily and permanently, for all kinds of reasons that have nothing to do with any preconceived intent not to share their lives, such as calls to military service, educational needs, employment opportunities, illness, poverty, and domestic difficulties.

Bark v. Immigration and Naturalization Service, 511 F.2d 1200, 1202 (9th Cir. 1975) (citation omitted) (emphasis added). The arbitrary presumptions that the law and regulations not only permit but require regarding "fraudulent grounds" thus violate due process on their face.

**The Challenged Law and Regulations Further Violate Substantive Due Process By Infringing the Right of Marital Privacy.**

Under a line of cases beginning with Griswold v. Connecticut, 381 U.S. 479 (1965), it has been recognized that a right of marital privacy exists and is protected by the Constitution. In Griswold, this right was held to arise from the "penumbras" of the First, Fourth, Fifth and Ninth Amendments, see id. at 484-86, but later analysis has characterized it as an aspect of substantive due process protected by the due process clause of the Fourteenth Amendment. See, e.g., Lawrence v. Texas, 539 U.S. 558, 573-74 (2003) ("[O]ur laws and traditions afford constitutional protection to personal decisions relating to marriage [and] family relationships" as aspects of "the liberty

4

protected by the Due Process clause") (citing Planned Parenthood of Southeastern Pa v. Casey, 505 U.S. 833, 851 (1992)).  All of these constitutional provisions are applicable in the CNMI.  See Covenant § 501.

Government regulation of the incidents of marriage, and conditioning the grant or withholding of a benefit or status based upon such incidents, infringes upon this right of marital privacy.  See, e.g., Bark v. Immigration and Naturalization Service, 511 F.2d 1200, 1201-02 (9th Cir. 1975) ("The concept of establishing a life as marital partners contains no federal dictate about the kind of life that the partners may choose to lead.  Any attempt to regulate their life styles, such as prescribing the amount of time they must spend together, or designating the manner in which either partner elects to spend his or her own time, in the guise of specifying the requirements of a bond fide marriage, would raise serious constitutional questions.  Aliens cannot be required to have more conventional or more successful marriages than citizens.") (citing, *inter alia*, Griswold); Chan v. Bell, 464 F.Supp. 125, 130 & fn. 13 (D.D.C. 1978) (noting that government evaluation of the viability of a marriage for immigration purposes "represents an intrusion into the most sensitive and private areas of life, and has extremely dangerous implications") (citing Griswold); Dabaghian v. Civiletti, 607 F.2d 868, 870 (9th Cir. 1979) ("[T]he very effort to apply the 'factually-dead' [marriage] test would trench on constitutional values; it would 'inevitably lead the INS into invasions of privacy which even the boldest of government agencies have heretofore been hesitant to enter'") (quoting and "heartily agree[ing]" with Chan v. Bell).

Insofar as the law and regulations at issue would grant or withhold a status based upon the reason a marriage is being "maintained," it infringes upon the right of marital privacy.  Indeed, this is the most egregious constitutional problem that they pose.  The spouses are explicitly being required to justify to the Government, on a yearly basis for the duration of their marriage, the reasons why, having once married *even for non-immigration-related reasons*, they still choose to

5

1 *remain* married to each other – or, phrased conversely, to justify why they have not divorced. That, quite frankly, is nobody's business but their own, and certainly no proper field for investigation or interrogation by the Government.[4]  The law and regulations, which are presumably enacted out of a concern for the "sanctity" of marriage, are in fact having precisely the opposite effect – they act as a positive incentive to divorce, and they promote and indeed require direct governmental intrusion into the private marital lives of every citizen-alien couple.  For this reason most of all, they violate due process.

**Other Constitutional Issues Raised By the Law and Regulations Are Not Addressed Herein.**

The issues noted above do not exhaust the possible constitutional deficiencies of the law and regulations at issue.  For example, they do not address the issue of whether procedural, as opposed to substantive, due process is violated by a system that authorizes denial of a permit based upon no more than "substantial grounds;" that permits a finding of "fraudulent grounds" from facts that would not on their face justify such a finding (particularly when such a finding could potentially have criminal consequences); or that includes elements that are vague and ambiguous as to such potentially crucial matters as time (e.g., Do they mean that a couple not intend to *ever* share the same residence, or only that they do not intend to share it during the anticipated one-year term of the permit?).  Nor do they touch upon the question of whether the regulations, even if valid on their face in all respects, are nevertheless being applied in a discriminatory manner, as, for example, against a particular disfavored nationality and/or sex – *viz.*, Bangladeshi males.  Those questions can be addressed at a later date, if necessary.  For present purposes, the question before the Court is the simpler one of whether the law and regulations facially violate the substantive due process and equal

---

[4] We may assume for present purposes, although not conceding, that the Government may properly investigate their reasons for entering into the marriage in the first place, as opposed to their reasons for "maintaining" it.  The former type of investigation is at least implicitly authorized in the federal system, and, although differences in the CNMI system may make it an improper inquiry here, it is not the subject of the instant challenge, which applies only to the *renewal* of an IR permit.

protection rights of an alien national seeking to renew an immediate relative permit.

**A Preliminary Injunction Should Issue If Summary Judgment Is Not Immediately Granted.**

A motion for a preliminary injunction is decided by means of a balancing test:

> The standard for a preliminary injunction balances the plaintiff's likelihood of success against the relative hardships to the parties. To receive a preliminary injunction, [the moving party is] required to show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. These two alternatives represent extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to the moving party, the less probability of success must be shown.

Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir.1999) (citations and internal quotation marks omitted). In this case, for the reasons set forth in the argument for summary judgment above, Plaintiff has shown a sufficient likelihood of success on the merits, and irreparable injury to his right to marital privacy should the incidents of his marriage continue to be investigated and judged by the Government, to justify a preliminary injunction even if the Court is not prepared to grant summary judgment in his favor at this time.

**Conclusion**

For the foregoing reasons, summary judgment, or, in the alternative, a preliminary injunction should be granted in favor of Plaintiff in this matter.

Respectfully submitted this 6th day of July, 2007.

                        O'CONNOR BERMAN DOTTS & BANES
                        Attorneys for Plaintiff

                        By:_____/s/_____
                              Joseph E. Horey

*3359-01-070703-PL-M summary judgment.wpd*