F I L E D
Clerk
District Court

SEP - 6 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MOHAMMED SHAJAHAN ALI,<br><br>Plaintiff<br><br>v.<br><br>MATTHEW T. GREGORY, individually and in his capacity as Attorney General of the Commonwealth of the Northern Mariana Islands, and MELVIN GREY, individually and in his capacity as Director of Immigration for the Commonwealth of the Northern Mariana Islands,<br><br>Defendants | Civil No. 07-0018<br><br>ORDER DISMISSING WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION |

THIS MATTER came before the court on Thursday, August 30, 2007, for

hearing of plaintiff's motion for summary judgment or, in the alternative, for a

AO 72
(Rev. 08/82)

preliminary injunction, and defendants' motion to dismiss for lack of jurisdiction. Plaintiff appeared by and through his attorney, Joseph E. Horey; defendants appeared by and through their attorney, Commonwealth Deputy Attorney General Gregory Baka.

THE COURT, having considered the written and oral arguments of the parties, rules as follows:

Defendants move the court to dismiss the complaint under Fed.R.Civ.P. 12(b)(1), on the ground that there is not yet (and may never be) a justiciable controversy before the court. Plaintiff argues that the Commonwealth's administrative process in its current form is *itself* unconstitutional and that requiring plaintiff to complete the process, combined with the earlier denial of his petition to renew his entry permit based upon his wife's absence from the Commonwealth, is a sufficient "actual controversy" for the court to entertain his 42 U.S.C. § 1983 claim for relief.

The facts are these. Plaintiff, a citizen of Bangladesh, married a citizen of the Federated States of Micronesia[1] on the island of Saipan, U.S. Commonwealth of the Northern Mariana Islands, on October 25, 2002. One consequence of the marriage

---

[1] There is apparently no question that plaintiff's wife, although not a U.S. citizen, was legally in the Commonwealth by virtue of the provisions of Title I, Article IV, Section 141 of the "Compact of Free Association" between the United States and the Federated States of Micronesia. 48 U.S.C. § 1901 (note).

was that plaintiff became eligible for Immediate Relative (706D) status under the immigration laws of the Commonwealth.[2] Plaintiff applied for and was issued a 706D entry permit each year from 2002 to 2005. His last permit expired in November, 2006. Plaintiff applied for a renewal, which was denied, primarily because his wife has not resided in the Commonwealth since late September of 2004. Plaintiff has appealed the denial of his permit and the matter is presently awaiting a September 19, 2007, hearing before a Commonwealth administrative hearings officer. The parties agreed to maintain the status quo until the court issued this order.

The court agrees with defendants that, at this time, it lacks subject matter jurisdiction because there is no justiciable case or controversy before it. For that reason, this matter is dismissed without prejudice.

It is instructive to first look at some of the general features of United States immigration law regarding non-citizen spouses. If plaintiff were subject to federal immigration law, he would be deemed a conditional permanent resident ("CPR"), 8 U.S.C. § 1186a (2000), subject to the rights, privileges, responsibilities and duties of a lawful permanent resident. If he acquired CPR status by virtue of his marriage to a

---

[2] The Commonwealth of the Northern Mariana Islands controls its own immigration, pursuant to Article V, Section 503 of the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America," Act of Mar. 24, 1976, Pub. L. No. 94-241, 90 Stat. 263 (at 48 U.S.C. § 1801 (note).

citizen or a permanent resident, he would be notified of his conditional status and that he would be required to petition for the removal of the conditions within ninety days immediately preceding the second anniversary of being granted the status. He and his spouse would be required to jointly file a "Petition to Remove the Conditions of Residence" (Form I-751).[3] After that, he, his wife, and any dependent children would be required to appear in person for an interview. If his petition was supported by affidavits of third parties they, too, would be required to be present, at his expense. His Form I-751 would need to be accompanied by evidence that the marriage was not entered into for the purpose of evading the immigration laws of the United States. Such evidence can include documentation showing joint ownership of property, a lease showing joint tenancy of a common residence, documentation showing commingling of financial resources, birth certificates of any children born of the marriage, the aforementioned affidavits of third parties having knowledge of the bona fides of the marital relationship, and any other relevant documentation establishing that his marriage was not entered into in order to evade the immigration laws of the United States. 8 C.F.R. § 216.4(a)(5). It would also be possible for the United States to later rescind a prior determination that the conditions should be

---

[3] The applying alien may also request a waiver of the requirement that his or her spouse join in the petition. 8 C.F.R. § 216.5.

removed if it was later determined that permanent resident status had been obtained through a marriage which was entered into for the purpose of evading the immigration laws of the United States. 8 C.F.R. § 216.3(b). Explicitly built in to the United States' system is protection from the very fear expressed by plaintiff: that he will be required to appear annually to "justify his marriage" to the Commonwealth. After the initial two-year review to remove the conditions on the alien's status, he or she cannot again be summoned unless the United States determines that the alien's permanent resident status was obtained by virtue of a sham marriage.

The Commonwealth's approach in important ways mirrors that of the United States. For example, both processes place upon the applicant the burden of proof to show that the marriage was not entered into in violation of the immigration laws. *See* 11 U.S.C. § 1186a, *supra*; Commonwealth Immigration Regulations, § 713, Spouses, Commonwealth Register, Vo. 29, No. 1 (Jan. 16, 2007). And, both processes look at events *after* the marriage to determine if the parties have conducted themselves as a man and wife would normally conduct themselves after a legitimate marriage. In both statutes, the parties are required to supply objective evidence that their marriage was not entered into to circumvent immigration laws. They may also be required to appear in person to submit to an interview. The significant difference between United States and Commonwealth immigration law is that plaintiff, as a nonresident alien, can never acquire *permanent* residence in the Commonwealth by virtue of his

marriage to a non-U.S. citizen who is or was living here legally as a citizen of the Federated States of Micronesia.

At present, there is nothing before the court to suggest that plaintiff will be subjected to the nightmare scenario he outlines, involving questions of the most intimate aspects of his married life. (In fact, after reviewing the written and oral arguments of plaintiff, he overtly challenges only the current Commonwealth law requiring him to appear and present objective evidence that his marriage was not entered into, and is not being maintained, to gain an immigration benefit.) Indeed, counsel for defendant represented as an officer of the court that the Commonwealth seeks, as provided by law, only objective indicia (none of which strike the court as unduly onerous or unreasonable) of a legitimate marriage.

The court recognizes that there are legitimate and compelling governmental interests in the legality of marriages and control over immigration. The court also recognizes that even a facially constitutional statute can be abused. And, finally the court understands plaintiff's concern that a nonresident worker married to a non-U.S. citizen who is legally in the Commonwealth under the terms of the compacts of free association may face annual scrutiny about his continuing right to reside in the Commonwealth if the marriage is deemed no longer viable. However, at this point in time, there is nothing before the court to suggest that constitutional boundaries have been or will be breached, the record is insufficiently developed, and the legal issues

have not been fully briefed. Failing that, this lawsuit must be dismissed without prejudice for lack of subject matter jurisdiction and the stipulated stay of the administrative hearing is lifted.

IT IS SO ORDERED.

DATED this 6th day of September, 2007.

_____
ALEX R. MUNSON